655 So.2d 600 (1995)
Robert Earl TERRELL, Plaintiff-Appellant,
v.
Glenda Gillyard TERRELL, Defendant-Appellee.
No. 26863-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1995.
*601 David A. Rothell, Mansfield, for appellant.
Richard Z. Johnson, Jr., Mansfield, for appellee.
Before BROWN, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
The appellant, Robert Earl Terrell, appeals a trial court judgment holding that he made a manual gift of a check in the amount of $85,000 to Glenda Gillyard Terrell. We affirm.

FACTS
Robert Earl Terrell and Glenda Gillyard Terrell were married in February 1988. Prior to the wedding, Mr. Terrell purchased a house with proceeds from a personal injury settlement. Although Mrs. Terrell was employed and Mr. Terrell was not, most of the home furnishings were purchased with Mr. Terrell's funds. The Terrell home and its contents burned in May 1992. The following December the Terrells separated. In July 1993, Mr. Terrell went to the office of Steve Shands, a representative of Aetna Insurance Company, to settle the insurance claim on the house and its contents. Because the insurance policy was in the name of both Mr. and Mrs. Terrell and Shands could not settle the claim without Mrs. Terrell's approval, Shands telephoned her to come to the office. After Mr. and Mrs. Terrell talked privately, Shands issued three checks in the following amounts: $103,405, $85,000, and $4,154.03. The $103,405 check was compensation for the structure; the $4,154.03 check and $57,845 of the $85,000 check, were compensation for the contents. The remainder of the $85,000 check was additional compensation for the *602 structure. Both Mr. and Mrs. Terrell were payees on the checks.
Mrs. Terrell testified that during their private conversation, Mr. Terrell sought a reconciliation and she refused, citing his various affairs as one reason. She indicated that Mr. Terrell then acknowledged reconciliation was impossible and asked her how much, of the checks, she thought she deserved. When she responded one-half, Mr. Terrell refused. Mrs. Terrell testified that after she reminded Mr. Terrell of how much she had assisted him during their relationship, including caring for him in the hospital after his accident, taking a six-month leave of absence from her job to care for him, and driving him to Shreveport for physical therapy, Mr. Terrell stated he was giving her the $85,000 check. Immediately after leaving Shands' office, Mr. and Mrs. Terrell went to Commercial National Bank ("CNB") and endorsed the checks. Because Mr. Terrell did not have proper identification, the bank refused to accept the checks. Mr. and Mrs. Terrell returned the next day and opened two savings accounts: one in the name of Robert Earl Terrell and one in the name of Glenda Gillyard Terrell. Mr. Terrell deposited the $103,405 into his account and Mrs. Terrell deposited the $85,000 into her account.[1] Mrs. Terrell testified the $85,000 was both a partial property settlement and a gift.
Mr. Terrell testified that he desperately wanted to reconcile and rebuild the marital home. According to Mr. Terrell, during the private conversation with Mrs. Terrell, he offered to endorse the check as a show of his resolve to make the marriage work. Mr. Terrell further testified he did not intend to make a gift of the $85,000 and did not intend any portion of the money to be a property settlement. He testified that following the deposit of the money, he and Mrs. Terrell were scheduled to meet at a local restaurant. However, when Mrs. Terrell did not arrive at the restaurant, he returned to CNB to ask if the checks could be stopped. When informed the bank could not stop payment of the checks, Mr. Terrell went to Shands to ask if the checks could be voided and rewritten. Shands informed Mr. Terrell they could not. Mr. Terrell then consulted a lawyer.
After the Terrells' divorce the issue of ownership of the $85,000 was tried by bench trial. The trial court found under the peculiar facts of the case that Robert Earl Terrell donated, without any conditions, the proceeds from the $85,000 check to Glenda Gillyard Terrell.[2] The trial court determined the agreement to endorse the check and allow Mrs. Terrell to deposit it in an account under her sole direction and control constituted a manual gift under LSA-C.C. Art. 1539. Mr. Terrell appeals the trial court's judgment in favor of Mrs. Terrell.

DISCUSSION
Although the determination of whether a donation took place is a legal question, the supporting evidence is based on factual conclusions drawn by the trial court. It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La. 1989). When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra.
In order to reverse a fact finder's determinations of fact, an appellate court must review the record in its entirety and meet the following two-part test: 1) an appellate *603 court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and 2) the appellate court must further determine that the record establishes that the fact finder is clearly wrong (manifestly erroneous). Theriot v. Lasseigne, 93-2661 (La. 07/05/94), 640 So.2d 1305.
The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality. LSA-C.C. Art. 1539. Money is a corporeal movable, and may be donated by manual gift. Allen v. Allen, 301 So.2d 417 (La. App.2d Cir.1974). Although mere delivery of a corporeal movable is sufficient to effect a change in ownership, the donee of a manual gift must show by strong and convincing proof that the donor had the intent to irrevocably divest himself of the thing and that delivery was made. The alleged donor's outward acts, together with any admissible evidence of the relationship of the parties, are important to prove a manual donation. Broussard v. Crochet, Broussard & Co., 477 So.2d 166 (La.App.3d Cir.1985).
In the instant case, the issue is whether Mr. Terrell intended to donate the $85,000 check to his estranged wife. Mrs. Terrell testified Mr. Terrell gave her the check after she refused to reconcile and reminded him of her role in his life. Mr. Terrell endorsed the check, delivered it to Mrs. Terrell and was present as Mrs. Terrell opened a savings account solely in her name and deposited the check. The record indicates he was aware of and made no objection to her actions. These outward acts not only constitute delivery but also are indicative of donative intent.
Mr. Terrell testified that he was under the impression that reconciliation was possible and that he gave Mrs. Terrell the check as a show of good faith of his intention to rebuild the matrimonial domicile. He further testified he would do whatever was necessary to reconcile with Mrs. Terrell. He asserts that his actions later in the day, i.e., attempting to stop payment of the checks and consulting a lawyer, prove he did not have the requisite donative intent. Although these acts could be considered as evidence of lack of donative intent, they also could be considered as evidence of a change of heart.
Donative intent is largely a question of fact. In the instant case, the trial court apparently found Mrs. Terrell's testimony more credible. Having reviewed the record in its entirety, we find that a reasonable factual basis exists for the trial court's finding of donative intent. Notwithstanding Mr. Terrell's testimony and his attempts to stop payment of the checks, we cannot say that the trial court was clearly wrong or manifestly erroneous in its determination that Mrs. Terrell demonstrated by strong and convincing evidence that Mr. Terrell had the requisite donative intent.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. Costs are assessed against Robert Earl Terrell.
AFFIRMED.
NOTES
[1] Apparently part of the $4,154.03, which is not in dispute, was used to pay a note, and the remainder of it was halved between the parties.
[2] The trial court clarified that a portion of the check represented Mrs. Terrell's one-half interest in community property and the amount in excess of her community property interest was a gratuity to her.