MOORE, J.
|, James Allen appeals a judgment partitioning his pension from Central States Pension Funds. He contends that under the proper partition formula, his former wife Margaret Allen’s share should be much less. We affirm.

Procedural Background

The facts are undisputed. James went to work for Roadway Express in 1976; Roadway began making contributions on his behalf to the pension fund. He married Margaret on February 11, 1982; on January 21, 1992, Margaret filed for art. 102 divorce, effectively terminating the community on that date after 9.934 years, but the community was not immediately partitioned. James retired from Roadway in 2001 with 25 years’ creditable service and, on October 1, 2001, began receiving a pension check of $2,000 per month. In April 2002, Margaret filed the instant petition to partition the community.
At trial in May 2005, Margaret urged that her share of the pension was governed by the fixed percentage rule of Sims v. Sims, 358 So.2d 919 (La.1978), whereby she was entitled to 21% of James’s monthly pension, or $420 per month. James argued that Margaret’s share was governed by the present cash value rule of Hare v. Hodgins, 586 So.2d 118 (La.1991), whereby she was entitled to only $80.14 per month.
The district court applied Sims v. Sims, awarding Margaret $397.37 per month (19.89% of the pension), plus a lump sum of $17,484.28 for amounts unpaid since *64 James’s retirement. James appealed.[1]
| JLegal Principles
The general rules provided by law for partitioning community property are applicable to dividing a community pension right. Hare v. Hodgins, supra at 122. In Sims v. Sims, supra, the supreme court held that a party has an interest in a formér spouse’s pension funds or rights when they become actually payable to or for the former spouse, in the proportion that they are attributable to the former spouse’s employment during the community. The community interest in an unma-tured retirement plan is expressed as a fraction (the “fixed percentage”) of which the numerator represents the number of years of creditable service that accrued during the existence of the community and the denominator represents the total years of creditable service. The community fraction is multiplied by one-half to determine the nonemployee spouse’s share of the retirement benefits. Sims v. Sims, supra at 924; Bullock v. Owens, 35,078 (La.App. 2 Cir. 9/26/01), 796 So.2d 170.
In Hare v. Hodgins, supra, the court recognized that the general rule of Sims v. Sims would not always be equitable. The court stated:
Nevertheless, there will be unusual cases in which a substantial part of the increased retirement benefits earned by the employee spouse after divorce will not result from a foundation provided by prior community earnings. In such cases, the partitioning court should select a more equitable method or modify the community or marital fraction rule to attribute that part of the post-divorce increase to the employee spouse separately. Although the emerging jurisprudential precepts are not yet well defined, some factors may be identified as helpful guidelines in determining when such a modification is required.
|sIn general, the partitioning court should inquire as to whether a substantial post-community increase is due to personal effort or achievement after the termination of the community that has little or no relationship with the prior community. The community should not be given credit when a substantial post-community increase to a retirement fund is due to a singular personal factor such as individual effort, education or achievement resulting in a merit raise or an extraordinary promotion or series of promotions. For example, such an increase in benefits might occur where the employee spouse attains a significantly higher-paying position while remaining within the coverage of the same pension plan, either through earning a post-community degree, or transfer within the company to an unrelated area of service. * * * The employee spouse should expect to profit individually from his extraordinary personal industry after divorce, and the nonemployee spouse is entitled to expect to share in the benefits earned by his or her investment in the community.
586 So.2d at 127-128 (citations omitted).
The trial court’s factual findings regarding the classification and valuation of community assets may not be disturbed unless they are clearly wrong. Thomson v. Thomson, 34,353 (La.App. 2 Cir. 1/24/01), 778 So.2d 736; Modere v. Modere, 93-610 (La.App. 5 Cir. 2/9/94), 632 So.2d 1180.

Discussion

By one assignment of error, James urges the district court erred in applying *65 the Sims formula. James shows that when the community was dissolved, he was in “Class 16” in the pension plan: Roadway was making contributions of $83 per week, and had he retired at that time he would have received a monthly pension of $80.14, which he contends was its present cash value. After the termination of the marriage, however, the Teamsters Union negotiated a new “Class 18.” James enrolled in this class, gradually raising his weekly contribution to $170, with the result that at retirement after 25 years, he received $2,000 per month.
14James contends that these facts satisfy the equitable analysis of Hare v. Hodgins in that his advancement from “Class 16” to “Class 18” represented a substantial increase that resulted not from nonpersonal factors but rather from his own meritorious individual efforts or achievements. Further, the creation of the new class was the work of the Teamsters Union; under the rules of mandate, the union was his agent, and the agent’s acts are ascribed to him. Finally, a nonemployee spouse cannot share in an increase in pension benefits if those benefits arose from mandatory contributions made by collective bargaining; in support, he cites Donaldson v. Donaldson, 02-111 (La.App. 5 Cir. 10/29/02), 831 So.2d 416.
Margaret responds that the case is a simple application of the general “fixed percentage” rule of Sims v. Sims, supra. Margaret submits that the district court’s calculation was correct:
[[Image here]]
She also submits that the increases of James’s contributions were mandated by the employer, represented only normal cost-of-living adjustments, and applied to all employees across the board — in short, they did not meet the Hare v. Hodgins criteria. Finally, she urges that the court in Goetzman v. Goetzman, 2001-2620 (La. App. 1 Cir. 11/8/02), 835 So.2d 731, rejected a claim identical to James’s.
Amy Heimberg, a supervisor of the pension department at Central States Pension Fund, testified by deposition that James’s pension was regulated by contracts called master freight agreements. She established the facts as outlined above, specifically that if on August 22, 1992, Roadway Ishad stopped making contributions on James’s behalf and then he retired at age 50 (in 1997), his monthly pension would have been $80.14. However, due to his continued employment with Roadway, his pension increased to the current benefit of $2,000 per month. Tellingly, she stated that anyone who attained 25 years’ credit from 1976 to 2001, working for Roadway or any other company governed by the master freight agreements, would have earned the same pension. She added that an employee need only work 180 days a year to obtain one year’s credit.
This evidence supports a conclusion that the enhancement of James’s pension between 1992 and 2001 was not due to singular personal factors resulting in merit raises. It also was not due to an extraordinary promotion, as occurred in Donaldson v. Donaldson, supra. Instead, it arose from circumstances generally affecting all employees. While we appreciate the equitable argument that the pension more than doubled after 1992, there is no showing that James’s work performance or duties increased during that time. On this record, we cannot say the district court was plainly wrong to apply the fixed percentage rule of Sims v. Sims, supra.
*66 Finally, we find no merit to James’s contention that the actions of the union to augment his pension should count as his own personal meritorious effort. The equitable division of a pension under Hare v. Hodgins hinges on “singular personal factors” and “individual effort,” concepts that would appear to preclude the application of agency principles.
| fiConclusion
The district court’s ruling is not clearly wrong. The judgment is therefore affirmed, with all costs to be paid by James Lee Allen.
AFFIRMED.

. James’s appeal was initially dismissed as arising from a partial final judgment. Allen v. Allen, 41,204 (La.App. 2 Cir. 3/2/06), 925 So.2d 671. The parties later dismissed the reserved claims and the appeal is now properly before this court.